IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Charlotte N. Sweeney

Civil Action No. 1:25-cv-02677-CNS

JAVIER ANDRES GARCIA CORTES,

    Petitioner,

v.

KRISTI NOEM, in her official capacity,
PAMELA BONDI, in her official capacity,
TODD M. LYONS, in his official capacity,
JOHN FABBRICATORE, in his official capacity and
WARDEN DENVER CONTRACT DETENTION FACILITY, whose true name is unknown,

    Respondents.

## ORDER

Before the Court is Petitioner Javier Andres Garcia Cortes's Petition for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2441. For the following reasons, the Court GRANTS IN PART the petition. In doing so, the Court presumes familiarity with the parties' briefing. And because that briefing demonstrates that Petitioner's challenge is fundamentally legal in nature, the Court declines to hold a hearing regarding Petitioner's challenge. *See* 28 U.S.C. § 2243.

### I.    ANALYSIS

In response to the petition, Respondents make four primary arguments. *First*, that the Court lacks jurisdiction "to review ICE's initiation of removal proceedings under 8 U.S.C.

1

§ 1252." ECF No. 7 at 7. *Second*, that even if the Court has jurisdiction, it "should find that Petitioner is properly detained" under 8 U.S.C. § 2552(b)(2)(A) because he falls under the statute. *Id. Third*, that Petitioner has received adequate process. *Id.* And *fourth*, that "Petitioner's *Accardi* claim fails." *Id.* The Court considers these arguments in turn.

### A. Jurisdiction

Respondents challenge the Court's jurisdiction to review initiated § 1252 removal proceedings. *See* ECF No. 7 at 8–11. Given the relief that Petitioner seeks, and the bases upon which his habeas claims are premised, the Court disagrees.

**Section 1252(g).** Certainly, § 1252(g) imposes "jurisdictional bars" to courts' review of certain habeas petitions. *Javier Tomas Munoz Materano v. Paul Aretata, et al.*, No. 25 Cic. 6137 (ER), 2025 WL 2630826, at *9 (S.D.N.Y. Sept. 12, 2025). *See also* 8 U.S.C. § 1252(g). But these statutory bars are read narrowly. *See, e.g., Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 487 (1999); *Grigorian v. Bondi, et al.*, No. 25-CV-22914-RAR, 2025 WL 2604573, at *3 (S.D. Fla. Sept. 9, 2025). Indeed, § 1252(g) only "bars federal courts from hearing 'any cause or claim' by an alien 'arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders.'" *Camarena v. Dir., Immigr. & Customs Enf't*, 988 F.3d 1268, 1272 (11th Cir. 2021) (quoting § 1252(g)).

Petitioner's claims fall outside § 1252(g)'s narrow jurisdictional limitations. Close reading of the petition confirms that Petitioner "challenges the 'underlying legal bases' of [the] decisions or actions" listed in § 1252(g). *Grigorian*, 2025 WL 2604573, at *3 (quoting *Madu v. U.S. Atty. Gen.*, 470 F.3d 1362, 1368 (11th Cir. 2006)). From the petition: "[T]he

immigration court and ICE *exceeded their statutory authority* by detaining [Petitioner] without the opportunity [to] seek release on bond." ECF No. 1 at 16 ¶ 78 (emphasis added); *see also id.* at 16 ¶ 84 ("DHS abruptly departed from *an interpretation and understanding* of the INA . . . and adopted an *unlawful and incorrect reading* of the expedited removal statute . . . .") (emphases added). Accordingly, the Court rejects Respondents' jurisdictional § 1252(g) arguments. *See, e.g., United States v. Hovsepian*, 359 F.3d 1144, 1155 (9th Cir. 2004) (en banc) ("[T]he consideration of a purely legal question, which does not challenge the Attorney General's discretionary authority, supports jurisdiction." (citation omitted)); *Madu*, 470 F.3d at 1368 ("[Section 1252(g)] does not proscribe substantive review of the underlying legal bases for . . . discretionary decisions and actions." (citation omitted)). Especially where Petitioner's claims, fundamentally legal in nature, rest on his detention, bond denial, and arrest, rather than "ICE's prosecutorial decision to execute [his] removal." *Kong v. United States*, 62 F.4th 608, 617 (1st Cir. 2023). *See also* ECF No. 1 at 2, 17–18 ¶¶ 7, 85, 91–92; *Materano*, 2025 WL 2630826, at *9 ("Federal courts can review how [the respondents] exercise their discretion because such a claim does not ask why the Secretary chose to execute the removal order but rather whether the way [the respondents] acted accords with the Constitution and the laws of this country." (quotations omitted)).

**Section 1252(b)(9).** According to Respondents, § 1252(b)(9) also imposes a jurisdictional bar on Petitioner's claims. *See* ECF No. 7 at 10. The Court disagrees. Several courts have rejected Respondents' § 1252(b)(9) arguments alongside their rejection of similar § 1252(g) challenges. *See, e.g., Jose J.O.E. v. Bondi*, No. 25-cv-3051

3

(ECT/DJF), --- F. Supp. 3d ----, 2025 WL 2466670, at *7 (D. Minn. Aug. 27, 2025) (collecting cases). The Court finds the reasoning of these cases persuasive. The Tenth Circuit has weighed in on this issue as well, reaching the following § 1252(b)(9) conclusion:

> We cannot accept the district court's expansive interpretation of § 1252(b)(9). Indeed, the language of the statute leaves no room for debate. The statute's 'narrow' scope does not deprive the district court of jurisdiction . . . . Congress did not intend the zipper clause 'to cut off claims that have a tangential relationship with pending removal proceedings.' . . . . A claim only arises from a removal proceeding when the parties in fact are challenging removal proceedings.

*Mukantagara v. U.S. Dep't of Homeland Sec.*, 67 F.4th 1113, 1116 (10th Cir. 2023) (citations omitted). Applying that reasoning here—where, discussed above, Petitioner's claims are legal in nature and challenge specific conduct unrelated to removal proceedings—the Court likewise rejects Respondents' § 1252(b)(9) jurisdictional argument.

Having dispensed with both of Respondents' jurisdictional arguments, the Court turns now to their challenges to the merits of Petitioners' claims.

**B. Merits**

Previewed above, Respondents mount several challenges to the merits of Petitioners' claims. *See, e.g.,* ECF No. 7 at 7.

1. Detainment, Section 1225(b)(2)(A), and Section 1226(c)

According to Respondents, Petitioner is "properly detained under 8 U.S.C. § 1225(b)(2)(A)" because "he unambiguously meets every element in the text of the statute"

justifying "detention during the pendency of his removal proceedings." ECF No. 7 at 11. Explained below, the Court disagrees.

Central to Respondents' argument—as well as Petitioner's detention—is a significant statutory distinction. *See, e.g., Lopez Benitez v. Francis*, No. 25 Civ. 5937 (DEH), --- F. Supp. 3d ----, 2025 WL 2371588, at *4 (S.D.N.Y. Aug. 13, 2025) ("Given that detention under § 1225(b)(2) is essentially mandatory and that detention under § 1226(a) is largely discretionary, it follows that whichever statute [Petitioner] is subject to is potentially dispositive here."); *Gomes v. Hyde*, No. 1:25-cv-11571-JEK, 2025 WL 1869299, at *2 (D. Mass. July 7, 2025). At bottom, Respondents contend that Petitioner "falls squarely within the ambit of section 1225(b)(2)(A)'s mandatory detention requirement," given he is an "applicant for admission." ECF No. 7 at 12; *see also id.* at 13 ("[S]ection 1225(b)(2)(A) is broad, and applies to noncitizens who have already entered or remain in the United States unlawfully."). Petitioner disagrees, as, in Petitioner's eyes, "Section 1225(b)(2) does not apply to noncitizens who are arrested on a warrant issued by the Attorney General while residing in the United States." ECF No. 1 at ¶ 38 (quotations omitted). Petitioner bolsters this disagreement by observing he was admitted to the United States in 2018. *Id.* at 15 ¶ 73.

The Court agrees with Petitioner that Respondents are wrong to conclude that his detention is mandatory under § 1225. *See, e.g.,* ECF No. 7-1 at 4 ¶ 24. The Court explains why by first explaining how, based on Respondents' own evidentiary submissions, Petitioner is not subject to § 1225's mandatory detention, and then why no exception to discretionary detention under § 1226 applies.

5

*First*, as several courts have recently explained, § 1225 imposes three conditions that must be satisfied for § 1225(b)(2)(A) to apply and justify mandatory detention. *See, e.g., Benitez*, 2025 WL 2371588, at *5 ("[F]or section 1225(b)(2)(A) to apply, several conditions must be met—in particular, an 'examining immigration officer' must determine that the individual is: (1) an 'applicant for admission'; (2) 'seeking admission'; and (3) 'not clearly and beyond a doubt entitled to be admitted.'") (quoting *Martinez v. Hyde*, Civil Action No. 25-11613-BEM, --- F. Supp. 3d ----,. 2025 WL 2084238, at *2 (D. Mass. July 24, 2025)); § 1225(b)(2)(A). Fatal to Respondents' argument is that, based on their own evidentiary submissions, Petitioner is not "seeking admission." *Id.* Turn to Petitioner's Notice to Appear, which states "You have been admitted to the United States, but are removable for the reasons stated below." ECF No. 1-6 at 1. Petitioner's Additional Charges of Inadmissibility/Deportability reiterates this point: "You were admitted on April 17, 2018, as a B2 with authorization to remain in the United States for a temporary period not to exceed October 16, 2018." ECF No. 1-7 at 1. It is axiomatic that—in DHS's own words—an "admitted" individual cannot be an individual "seeking admission." *See, e.g., Benitez*, 2025 WL 2371588, at *5. Respondents' own brief makes essentially this point: "Petitioner was initially *admitted* to the United States in April 2018 on a nonimmigrant B2 visa . . ." ECF No. 7 at 13.

Notably, Respondents do not contend with § 1225(b)(2)(A)'s "seeking admission" requirement. *See Martinez*, 2025 WL 2084238, at *4 ("Tellingly, Respondents' brief repeatedly elides or avoids section 1225(b)(2)(A)'s 'seeking admission' language when quoting the statute."). And to the extent they do so in later arguing § 1226's discretionary

6

detention provision does not apply, Respondents fail to persuade that Petitioner is no longer "seeking admission" simply because he has resided in this country for years—particularly where the documents quoted above make clear Petitioner has already been "admitted." ECF No. 7 at 16; *see also Romero v. Hyde*, Civil Action No. 25-11631-BEM, 2025 WL 2403827, at *10 (D. Mass. Aug. 19, 2025) ("[T]he categories 'applicants for admission' and 'seeking admission' are not coterminous.").

Because Petitioner is not, nor was he at the time he was arrested, "seeking admission," *id.*, § 1225(b)(2)(A)'s mandatory detention provision does not apply. Respondents are wrong to interpret the statute as placing Petitioner "squarely [under] its ambit [and] mandatory detention requirement." ECF No. 7 at 12. *See also Romero v. Hyde*, --- F. Supp. 3d ----, Civil Action No. 25-11631-BEM, 2025 WL 2403827, at *9 (D. Mass. Aug. 19, 2025) ("[T]he phrase 'seeking admission,' otherwise undefined in the statute, necessarily requires some 'some sort of present-tense action.'" (citation omitted)).

*Second*, Respondents argue "[s]ection 1226(a) is not applicable to Petitioner," *id.* at 14, because essentially, he falls under § 1225. ECF No. 7 at 14. That's wrong. But even entertaining the broader argument that Petitioner does not qualify for discretionary detention under § 1226, the Court remains unpersuaded, given that—absent any criminal conviction as to the statute's enumerated offenses—none of § 1226's exceptions to discretionary detention apply to Petitioner. *See* § 1226(c)(1); *see also id.* at § 1226(c)(1)(E)(i)–(ii) (demanding inadmissibility under specified INA provisions "*and* [being] charged with, [being] arrested for, . . . convicted of, admi[ssion of] having committed, or admit[ting] committing acts which constitute the essential elements" of

specified crimes) (emphasis added); *Doe v. Moniz, et al.*, No. 1:25-CV-12094-IT, 2025 WL 2576819, at *6 (D. Mass. Sept. 5, 2025) ("8 U.S.C. § 1226(c)(1)(E) . . . makes detention mandatory for nonresidents who satisfy two conditions."). Accordingly, the Court agrees with Petitioner that he lacks any criminal record that would otherwise place him outside of § 1226(c)'s discretionary detention provision.

* * *

For the reasons set forth above, Petitioner is not subject to § 1225(b)(2)(A)'s mandatory detention provision, nor does he fall outside of § 1226(a)'s discretionary detention provision based on any § 1226(c) exceptions. Accordingly, the Court agrees with Petitioner that Respondents were wrong to detain him without an opportunity to seek release on bond.

   2. Due Process

Respondents seek dismissal of Petitioner's due process claims because they are "without merit," ECF No. 7 at 17, given "[t]he cause of [Petitioner's] detention is that [he] is subject to mandatory detention" under § 1225(b)(2)(A). ECF No. 7 at 17. The Court rejected this argument in its statutory analysis, and for this reason rejects it as a basis for dismissing Petitioner's due process claims. *Cf id.* at 19 (asking the Court to "conclude that Petitioner's due-process rights are *coextensive* with the rights provided under statute") (emphasis added). But even applying due process principles, *see, e.g., Mathews v. Eldridge*, 424 U.S. 319, 335 (1976), they "weigh in favor of Petitioner," *Doe*, 2025 WL 2576819, at *6. In sum, Petitioner has a cognizable private interest in being freed from continual—possibly illegal—detention; there is a severe risk of erroneous deprivation,

based on the factual record and Respondents' failure to identify any criminal record or conviction Petitioner has incurred; and where, as one court has persuasively observed, "the public has no interest in the detention without bond of someone against whom no criminal charges are pending and who is an active member in his community." *Id.* at *11.

At bottom, the Court agrees with other courts that have, against substantially similar factual backgrounds, concluded that detention without a bond hearing amounts to a due process violation. *See, e.g., Benitez*, 2025 WL 2371588, at *13; *Doe*, 2025 WL 2576819, at *11 ("In sum, the *Mathews* factors weigh in favor of Petitioner, and the court finds that his detention without a bond hearing violates his Due Process rights."). Respondents' citation to *Thuraissigiam* in support of its argument that Petitoner's due process claims should be dismissed is unavailing, given *Thuraissigiam* was set against dramatically different factual circumstances. *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 140 (2020) ("[A]n alien in *respondent's position* has only those rights regarding admission that Congress has provided by statute."); *id.* at 139 (rejecting argument that respondent was entitled to greater due process where argument "disregard[ed] the reason for our century-old rule regarding the due process rights of *an alien seeking initial entry*") (emphasis added). Accordingly, *Thuraissigiam* does not disturb the Court's due process conclusion. *See Martinez*, 2025 WL 2084238, at *8.

3. Accardi

Finally, Respondents argue Petitioner's *Accardi* claim must be dismissed because he "fails to identify any policy directive that gives rise to an enforceable right under the *Accardi* doctrine." ECF No. 7 at 21. The Court agrees—to an extent. "The *Accardi* doctrine

stands for the unremarkable proposition that an agency must abide by its own regulations . . . . The *Accardi* doctrine is not an independent cause of action; rather, it is merely a doctrine upon which to base a . . . due process claim." *Ajaj v. United States*, No. 14-cv-01245-SMY, 2015 WL 14097638, at *2 (S.D. Ill. Dec. 29, 2015) (citations omitted); *see also Rohani v. Rubio*, No. 2:24-cv-00389-LK, 2025 WL 1503950, at *14 (W.D. Wash. May 27, 2025) ( "[T]he *Accardi* doctrine is not an independent cause of action." (citations omitted)). Thus, to the extent that Petitioner appears to assert a standalone *Accardi* claim, ECF No. 1 at 19, its dismissal is proper. Regardless, given that *Accardi* simply provides a basis for a due process claim, *see Ajaj,* 2015 WL 14097638, at *2, its dismissal is immaterial to the Court's disposition, given that the Court has concluded, as explained above, Respondents have violated Petitioner's due process rights by improperly justifying his detention under § 1225(b)(2)(A) without having conducted a bond hearing.

## II.     CONCLUSION

Having determined that Petitioner has asserted viable claims against Respondents, the Court must now determine what remedy is appropriate. *See Romero*, 2025 WL 2403827, at *13.

Petitioner seeks an order of release, or in the alternative, an order compelling a bond hearing. *See* ECF No. 1 at 21. As to Petitioner's first request, the Court agrees with Petitioner that there is no evidence—nor have Respondents offered any—demonstrating that Petitioner was detained pursuant to a warrant. Indeed, Respondents' evidence seems to indicate that Petitioner was detained *without* a warrant. *See* ECF No. 7-1 at 3 ¶ 13. And issuance of a warrant, as well as detention pursuant to it, is a condition that must

be satisfied in order to justify discretionary detention under § 1226(a). *See, e.g., Gomes*, 2025 WL 1869299, at *1. In other words, without a warrant, Petitioner's § 1226 detention is improper.

Despite this problematic lack of evidence, the Court declines at this time to order Petitioner's release. Instead, as required under § 1226, the Court orders that Respondents provide Petitioner with a bond hearing. At that hearing, Respondents bear the burden of showing that Petitioner was detained pursuant to a warrant in order to justify his initial and continued detention. *See, e.g., Johnson v. Arteaga-Martinez*, 596 U.S. 573, 579–80 (2022) ("Noncitizens detained under § 1226(a) receive bond hearings after the Government *initially* detains them." (citation omitted) (emphasis added)); *L.G. v. Choate*, 744 F. Supp. 3d 1172, 1185 (noting the government "must bear the burden to justify . . . detention" under § 1226(a))

Consistent with the above analysis, Petitioner is entitled to a bond hearing under § 1226(a). Respondents shall provide Petitioner with a bond hearing under § 1226(a) within SEVEN DAYS of this Order. Respondents are ENJOINED from denying bond to Petitioner on the basis that he is detained pursuant to § 1225(b)(2)(A). Respondents are further ORDERED to file a status report within FIVE DAYS of Petitioner's bond hearing, stating whether he has been granted bond, and, if his request for bond was denied, the reasons for that denial. Such status update shall also include as an attachment any warrant justifying Petitoner's detention at the time he was detained. If such a warrant does not exist, and Respondents failed to meet their burden of producing one at Petitioner's bond hearing, such status update shall say so affirmatively.

Accordingly, Petitioner Javier Andres Garcia Cortes's Petition for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2441, ECF No. 1, is GRANTED IN PART, to the extent Petitioner seeks a bond hearing at which Respondents bear the burden of proof of showing his continued detention is proper and was proper at the time of his arrest.

DATED this 16th day of September 2025.

BY THE COURT:

_____
Charlotte N. Sweeney
United States District Judge